# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**

       **Plaintiff,**

                            **Case No. 06-CR-33**

  v.

**CLARENCE A. ELLIS,**

       **Defendant.**

## RECOMMENDATION TO THE HONORABLE LYNN ADELMAN ON THE DEFENDANT'S MOTION TO SUPPRESS

On February 14, 2006, the grand jury returned a single-count indictment against the defendants, Clarence A. Ellis ("Ellis"), charging him with possession of ammunition after being convicted of a crime punishable by a term of imprisonment exceeding one year. Ellis has filed a motion to suppress the ammunition specified in the indictment, which was recovered after officers entered a residence located at 1369 Douglas Avenue, Apartment 243, Milwaukee, Wisconsin. On May 8, 2006, this court conducted an evidentiary hearing to address Ellis' motion. The government appeared at the evidentiary hearing by United States Assistant Attorney Stephen Ingraham. Ellis appeared in person and by his attorney, Nancy Joseph of the Federal Defender Services of Wisconsin. The pleadings on the motion to suppress are now closed, and it is ready for resolution. A jury trial is scheduled to commence before the Honorable Lynn Adelman on May 30, 2006, with a final pretrial conference set for May 19, 2006.

**Evidentiary Hearing Testimony**

The following summary of facts is undisputed and is based on the testimony of Racine Police Officer Dennis Cecchini ("Officer Cecchini"), the only witness to testify at the evidentiary hearing. According to Officer Cecchini, he was on street patrol when he was notified by police dispatch of a call that someone at the Douglas Avenue apartment complex may have been shot. Based on this information, Officer Cecchini went to the residence to check on the welfare of persons at that location. Upon arrival, Officer Cecchini and other officers were met by an individual identified as "Ellison," who was waiting at the exterior door of the apartment complex. Ellison ushered the officers inside and told them that the white male who lived in apartment 243 had been firing homemade guns outside the apartment building. He also expressed concern that the white male, who he later identified as Ellis, might have accidentally shot someone or himself.

Officer Cecchini and the other officers observed several empty ammunition shells near the exterior door and also saw quarter-sized drops of fresh blood on the exterior door jamb. More blood was on the walls inside the apartment complex, and a trail of blood drops led to the door of apartment 243. Out of concern that someone inside the apartment may be injured, Officer Cecchini and three other officers began knocking on the door of the apartment. Although Officer Cecchini heard a television inside the apartment, no one answered the door. The officers also attempted to look in the windows of the apartment, but were unable to see inside because of the blinds.

Police dispatch contacted the building manager to unlock the apartment. Although the manager indicated that he would come to the apartment complex, Officer Cecchini testified that he feared waiting for the manager's arrival or waiting to obtain a warrant might risk the safety of someone injured inside the apartment, who was unable to respond to the officers. Accordingly, after

2

fifteen minutes of unsuccessfully trying to contact the apartment occupants, Officer Cecchini called his sergeant and stated that he felt there were exigent circumstances to enter the apartment without a warrant. His sergeant agreed, and Officer Cecchini promptly used a sledge hammer to break down the door to the apartment. All officers entered the apartment and conducted a protective sweep. No one was present at the residence, but, in the course of their protective sweep, the officers observed several boxes of ammunition on a dresser, loose ammunition in an ashtray, a cordless drill with a bit and a round tube that Officer Cecchini believed could be used to construct homemade guns, and an electrical bill listing Ellis as the resident of the apartment.

Because the officers had destroyed the door to the apartment, they remained at the apartment to await the arrival of the building manager. During this time, Officer Cecchini ran a background check on Ellis, and discovered an outstanding warrant for his arrest. Shortly thereafter, Ellis returned to the apartment with a female identified as Marsha Roushia. The officers arrested Ellis and subsequently conducted a search of the apartment, after obtaining Roushia's written consent. The ammunition specified in the indictment, which is the focus of Ellis' motion to suppress, however, was observed in plain view, prior to the consent search.

## Analysis

After the close of testimony by Officer Cecchini, the court entertained oral argument on the motion to suppress. The parties agreed that resolution of the motion depends on whether the officers' warrantless entry of the apartment was authorized based on exigent circumstances. Exigent circumstances are established when there is a compelling need for law enforcement officials to act, and there is no time to secure a warrant. Michigan v. Tyler, 436 U.S. 499, 509 (1978); United States v. Saadeh, 61 F.3d 510, 516 (7th Cir. 1995). The doctrine has been applied where law enforcement

3

agents fear imminent destruction of evidence (Ker v. California, 374 U.S. 23, 39-40, (1963)); escape of a suspect (Warden v. Hayden, 387 U.S. 294, 298-300 (1967)); grave danger to their lives (id); or for the safety of someone inside the premises (United States v. Jenkins, 329 F.3d 579, 581 (7th Cir. 2003)(citing United States v. Richardson, 208 F.3d 626, 629 (7th Cir.2000).

In determining whether exigent circumstances justify the warrantless entry of a residence, the court must analyze the situation from the perspective of officers at the scene, asking not what police could have done but rather whether they had, at the time, reasonable belief that there was compelling need to act and no time to procure a search warrant. United States v. Marshall, 157 F.3d 477, 482 (7th Cir. 1998). The test is an objective one. United States v. Foxworth, 8 F.3d 540, 544 (7th Cir. 1993).

With these standards in mind, the court concludes that exigent circumstances provided legal justification for law enforcement officials' entry into Ellis' apartment. Police dispatch informed the officers that someone at the apartment complex might have been shot. Upon arrival at the apartment complex, the officers were met by Ellison who was awaiting their arrival and appeared to be the person who called the police. His presence and narrative, together with the officers' independent observations of gun casings and a blood trail leading to Ellis' apartment, substantiates the information the officers had previously received. Under the circumstances, it was reasonable for the officers to believe that Ellis or another occupant of the apartment had been shot. Acting on that belief, the officers attempted to make contact with an individual in the apartment but were unable to do so. If someone had been shot as the officers believed, waiting for a warrant before entering the apartment would risk the safety of the injured person and was not feasible. As the Seventh Circuit observed in United States v. Brown, "[w]e do not think that the police must stand outside an apartment, despite legitimate concerns about the welfare of the occupant, unless they can hear screams . . . . An officer

4

on the beat must be allowed latitude to make snap judgments, subject to the requirements of reasonableness." 64 F.3d 1083, 1086 (7th Cir. 1995). The officers' entry into the apartment was reasonable and justified by exigent circumstances. Accordingly, the court will recommend that Ellis' motion to suppress be denied.

**IT IS THEREFORE RECOMMENDED** that the motion to suppress be **denied.**

Your attention is directed to 28 U.S.C. § 636(b)(1)(B)-(C), Federal Rule of Criminal Procedure 59 (b)(2), and General Local Rule 72.3 (E.D. Wis.); whereby written objections to any recommendation herein or part thereof may be filed within ten days of service of this recommendation. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to object in accordance with the rules cited herein waives your right to review.

Dated at Milwaukee, Wisconsin this 12th day of May, 2006.

s/AARON E. GOODSTEIN
United States Magistrate Judge